UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Case No.: 3:20CR98 (JCH) |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KEVIN BRAZA | : | September 9, 2020 |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The Court has scheduled sentencing in this matter for September 16, 2020. The Government respectfully submits this memorandum for the Court's consideration of Mr. Braza's sentence. For the reasons set forth below, the Government believes that a guidelines sentence is sufficient but not greater than necessary.

I.  **BACKGROUND**

  A. **Factual Background**

As set forth in the presentence report, and as stipulated in the plea agreement, Mr. Braza willfully filed false tax returns for the years 2013 through 2017. The investigation revealed that Mr. Braza, the owner of K.E. Braza Construction, engaged in a scheme to evade assessment of income tax by intentionally diverting approximately $1.1 million of business proceeds from his construction business, and failing to report those proceeds on his federal income tax returns. As part of this scheme, Mr. Braza misled his accountants by failing to disclose numerous cashed business checks as well as business checks he deposited in his personal bank account. Mr. Braza only turned over bank records in the name of his business to his accountant, who relied on those statements when preparing Mr. Braza's tax returns. In addition, Mr. Braza failed to report

gambling winnings. As a result of his scheme, from 2013 through 2017, Mr. Braza failed to pay approximately $184,579 in taxes due to the Internal Revenue Service.

### B. Procedural Background

On June 24, 2020, Mr. Blaza pled guilty to a one-count Information charging him with tax evasion in violation of 26 U.S.C. § 7201. Mr. Braza entered into a written plea agreement that included a guideline stipulation. The parties agreed that under U.S.S.G. § 2T1.1 the base offense level is 16. Three levels are subtracted under U.S.S.G. § 3E1.1 for acceptance of responsibility, resulting in a total offense level of 13. Based on this offense level and assuming a Criminal History Category I, the resulting guidelines range is 12 to 18 months' imprisonment, at least one-half of which must be satisfied by imprisonment. Mr. Braza agreed not to appeal or collaterally attack any sentence that does not exceed 18 months' imprisonment and a 3-year term of supervised release.

Mr. Braza has already paid restitution to the United States Treasury in the amount of $394,474, which includes the total amount of taxes, interest, and penalties owed for the tax years 2013 through 2017.

## II.  DISCUSSION

Mr. Braza seeks a probationary sentence or home confinement, arguing that the Court should not defer to the guidelines because (a) they are based on the tax loss and (b) doing so would create unwarranted sentencing disparities. In addition, Mr. Braza argues that probation is appropriate because he (a) has shown extraordinary acceptance of responsibility; (b) has family and business commitments that will be negatively impacted if he were incarcerated; and (c) is at an increased risk of severe illness from COVID-19. For the reasons set forth below, the government respectfully submits that a guidelines sentence is appropriate to accomplish the important objectives of reflecting the seriousness of the conduct and providing general deterrence.

The collateral consequences to his family is not a reason for Mr. Braza to avoid prison, nor is the speculative impact incarceration might have on his employees. Finally, Mr. Braza should not avoid prison based on his concerns regarding Covid-19.

### A. The Sentencing Guidelines

The Sentencing Commission is clear as to the purpose of the tax laws and associated sentencing guidelines dealing with tax crimes:

> The criminal tax laws are designed to protect the public interest in preserving the integrity of the nation's tax system. Criminal tax prosecutions serve to punish the violator and promote respect for the tax laws. Because of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying these guidelines. Recognition that the sentence for a criminal tax case will be commensurate with the gravity of the offense should act as a deterrent to would be violators.

U.S.S.G. § 2T1.1, Introductory Commentary. In fact, the Background section of the Application Note goes further stating:

> This guideline relies most heavily on the amount of loss that was the object of the offense. Tax offense, in and of themselves, are serious offenses; however, a greater tax loss is obviously more harmful to the treasury and more serious than a smaller one with otherwise similar characteristics. Furthermore, as the potential benefit from the offense increases, the sanction necessary to deter also increases.

U.S.S.G. § 2T1.1, Application Note.

The policy judgments articulated by the Sentencing Commission are clear: tax evasion is a serious crime and can be deterred by comparative prison sentences. Thus the guidelines for tax offenses appropriately increase with the size of the loss. Empirical research supports the common sense proposition that meaningful terms of imprisonment have a deterrent effect on white collar crime. *See, e.g.*, Raymond Paternoster & Sally S. Simpson, *Sanction Threats and Appeals to Morality: Testing a Rational Choice Model of Corporate Crime*, 30 Law & Soc'y Rev. 549 (1996)

3

(finding that both formal and informal sanctions had a deterrent effect on whether MBA students and corporate executives claimed they would commit illegal corporate acts.). One study found that a greater risk of detection and criminal prosecution inhibited tax cheating. *See* Steven Klepper & Daniel Nagin, *Tax Complaince and Perceptions of the Risks of Detection and Criminal Prosecutions*, 23 Law & Soc'y Rev. 209 (1989). In tax cases where there is often significant periods of time between the conduct and the prosecution, and there is a low probability that the Government will even uncover the tax fraud, an anticipated lengthy sentence may be the only meaningful way to deter tax cheating.

Importantly, the tax sentencing guideline was specifically fashioned to reduce disparity in sentencing of tax offenses and increase the average sentence length. *Id.* In fact, in fiscal year 2019, 65% of tax fraud offenders were sentenced to prison. U.S.S.C. Quick Facts Tax Fraud Offenses, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Tax_Fraud_FY19.pdf. Imposing a guidelines sentence would advance the systemic desire for uniformity in sentencing and sentencing fairness.

**B.  The Sentencing Factors**

A sentence within the guidelines range is sufficient but not greater than necessary to comply with 18 U.S.C. § 3553(a).

   a.  Nature and Circumstances of the Offense

The nature and circumstances of the offense are straightforward and serious. Mr. Braza did not engage in a single episode of unlawful behavior. Instead, he engaged in a five year scheme to defraud the government by withholding relevant business and banking records from his accountant and thus filing false tax returns.

The Government asks the Court to consider the harm to the victims—the citizens and residents of the United States who are the direct beneficiary of taxes paid to the federal government. Without the timely receipts of taxes, the United States would be unable to provide the necessary and critical services on which its citizens and residents depend. The criminal tax laws are designed to protect the public interest and preserve the integrity of the nation's tax system that funds the nation's coffers. Criminal tax prosecutions serve to punish the violator and promote respect for the tax laws. Mr. Braza's willful failure to report approximately $565,161 in additional income and pay approximately $184,579 in taxes warrants a prison sentence.

While it is true that Mr. Braza accepted responsibility and recently paid restitution to the IRS, acceptance of responsibility is already accounted for in the guidelines calculation. As to his payment to the IRS, it is not clear why Mr. Braza should be further rewarded for paying what he has admitted he owed to the Government. Mr. Braza was fortunate that his mother had the means to lend him the money to repay the Government prior to sentencing; however, should Mr. Braza benefit from this repayment, unfair sentencing disparities may arise when a similarly situated defendant does not have access to money.

Mr. Braza also claims that he has already been punished—both financially and emotionally. As for the financial repercussions and intangible suffering Mr. Braza has endured because of his conduct and subsequent guilty plea, they are no different than what a similarly situated defendant would experience. "Every convicted felon suffers the indignity and ill-repute associated with a criminal conviction." *United States v. Rattoballi*, 452 F.3d 127 (2d Cir. 2006) (abrogated on other grounds).

b. History and Characteristics

Mr. Braza argues that his family situation should warrant a sentence of probation, but his financial and emotional support of his family does not appear to be extraordinary or irreplaceable to warrant a departure from the guidelines. To ensure fairness and consistency in sentencing between defendants, the Sentencing Guidelines policy statement makes clear that "family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted." U.S.S.G. § 5H1.6. It further states that a departure may be warranted only if the "loss of caretaking or financial support substantially exceeds the harm ordinarily incident to incarceration for a similarly situated defendant" or "for which no effective remedial or ameliorative programs reasonably are available, making the defendant's caretaking or financial support irreplaceable to the defendant's family." *Id.* The Second Circuit has articulated, consideration of family circumstances is discouraged as "many defendants shoulder responsibilities to their families . . . [d]isruption of the defendant's life, and the concomitant difficulties for those who depend on the defendant, are inherent in the punishment of incarceration." *United States v. Johnson*, 964 F.2d 124, 128 (2d Cir. 1992). Here, it does not appear that any resulting hardship is greater than those faced by other criminal defendants with families. This is not to deny the toll incarceration would have on Mr. Braza's family. But, routinely granting departures based on what are unfortunate but unavoidable consequences of incarceration would significantly erode the penal system.

In addition, the fact that Mr. Braza's business might be shut down and his employees would be out of work is not a reason for probation or home confinement. Mr. Braza relies on *United States v. Milikowsky*, 65 F.3d 4 (2d Cir. 1995), and argues that incarcerating Mr. Braza would cause extraordinary hardship to his employees and the failure of this business. While *Milikowsky* recognized a basis for departures where the impact of the defendant's incarceration was

extraordinary, the facts presented here are distinguishable. In *Milikowsky*, the district court had determined during sentencing that if the defendant was incarcerated, two companies would immediately go into bankruptcy and between 150 and 200 people would lose their employment. 65 F3d at 8. The Second Circuit found the facts considered by the district court comprised "extraordinary circumstances." *Id* at 9. Here, there are no "extraordinary circumstances." There is no evidence that Mr. Braza employs more than a handful of people who would be able to seek employment with other local contractors. "Business ownership alone, or even ownership of a vulnerable small business, does not make downward departure appropriate." *Id.* Indeed, to find otherwise would create sentencing disparities between white collar defendants who own their business and those defendants that are merely employees. *See also Rattoballi* 452 F.3d 136 ("[W]e are disinclined to accord the prospect of business failure decisive weight when it is a direct function of a criminal investigation that had its origins in the defendant's own unlawful conduct."). Furthermore, under U.S.S.G. § 5H1.11, employment-related contributions are not ordinarily relevant in determining whether a departure is warranted.

      Mr. Braza's history and characteristics, while important and deserving of consideration, do not warrant a sentence below the guidelines range when balanced against the other sentencing factors. There is nothing about Mr. Braza's history or characteristics that are either so unique or so compelling as to justify a noncustodial sentence.

      c. Seriousness of the Offense, Just Punishment, Respect for the Law

      A guidelines sentence, including a period of incarceration, appropriately reflects the seriousness of this offense, promotes respect for the law and provides just punishment. When any person has income to declare from his business, like here, and willfully files a false tax return

underreporting his income, he should be punished by a sentence that includes a period of incarceration. This promotes respect for our voluntary tax laws.

      d. Specific and General Deterrence

As explained above, general deterrence is an especially important goal in sentencing criminal tax offenses, because criminal tax prosecutions are relatively rare. Sentencing Mr. Braza to a guidelines sentence will send a strong deterrent message that tax fraud is a serious offense that will be appropriately punished.

**C. Covid-19**

The presence of Covid-19 in the federal prison system does not warrant a noncustodial sentence. First, should the Court sentence Mr. Braza to a period of incarceration, the Court could set the self-surrender date for a date in the future, until after the pandemic has subsided. Second, Mr. Braza's hypertension may not put him at a greater risk of a severe illness from Covid-19. While the CDC has stated that hypertension may put individuals at an increased risk, the level of evidence is mixed, meaning that multiple studies have reached difference conclusions. Third, while obesity does increase a person's risk of severe illness from Covid-19, the Bureau of Prisons has taken significant measures in an effort to protect the health of the inmates in its charge. And fourth, probation or home confinement would be inconsistent with the sentencing goals set forth in 18 U.S.C. § 3553(a), which provides that the sentence imposed should, among other things, reflect the seriousness of the offense, promote respect for the law, provide just punishment, and afford adequate deterrence.

**D. Restitution**

As part of the plea agreement, Mr. Braza has already made full restitution to the Internal Revenue Service.

## III.  CONCLUSION

For the above reasons, the Government submits that a guideline sentence is appropriate in light of all the section 3553(a) factors and is sufficient but not greater than necessary to meet the goals of sentencing.

Respectfully submitted,

JOHN H. DURHAM
UNITED STATES ATTORNEY


/s/_____

HEATHER CHERRY
ASSISTANT UNITED STATES ATTORNEY
157 CHURCH STREET
NEW HAVEN, CT 06510
FEDERAL BAR NO. phv07037

**Certificate of Service**

I hereby certify that on September 9, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

          /s/_____
HEATHER CHERRY
ASSISTANT UNITED STATES ATTORNEY